**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JAMES W. MAHAFFEY *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 11-995 (RC) |
| | : | | |
| v. | : | Document No.: | 35 |
| | : | | |
| MARRIOTT INT'L, INC. *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT MARRIOTT**

## I.  INTRODUCTION

This case involves a tort action brought by plaintiffs, James W. Mahaffey and his wife

Marie Mahaffey, against Marriott International, Inc. ("Marriott") and Schindler Elevator

Corporation.  The claims stem from an alleged injury Mr. Mahaffey sustained while exiting an

elevator in a motorized scooter at the Marriott Wardman Park Hotel on July 23, 2009.  Presently

before the Court is the plaintiffs' Motion for Sanctions against Marriott ("Sanctions Motion").

[Docket #35].  For the reasons set forth below, that motion is DENIED.

## II.  FACTUAL ALLEGATIONS AND BACKGROUND

As set forth above, plaintiff, Mr. Mahaffey, claims to have been injured at a Marriott

hotel on July 23, 2009 while exiting an elevator on his way to his guest room shortly after

checking in.  Amended Complaint at ¶¶ 10-18.  Plaintiff claims that, while exiting the elevator in

a motorized scooter, the elevator violently lurched, throwing him off the scooter and causing the

scooter to land on top of him, resulting in serious injury.  *Id.*

Plaintiff claims that a bell hop, who rode a different elevator with plaintiff's luggage, came upon the scene, righted the scooter, helped plaintiff back onto the scooter, and assisted him to his room. *Id.* ¶ 19. Plaintiff also claims that immediately after the accident, upon arriving at his room, he called the front desk to alert them of his injuries and to obtain medical assistance, and that about an hour later, a hotel security guard came to his room. *Id.* ¶¶ 20-21. Plaintiff further claims that he called the front desk several more times over the next couple of days to obtain medical assistance. *Id.* ¶ 23. Neither party has provided any evidence that Marriott conducted an investigation into the alleged accident as a result of these contacts, no records have been located indicating that such an investigation occurred, and Marriott has not identified any witness that recalls having conducted such an investigation. *See generally*, Defendant Marriott International Inc.'s Opposition to Plaintiffs' Motion for Sanctions ("Opposition") [Docket #38].

A little more than a month after the alleged accident, on August 25, 2009, plaintiff's then-counsel purported to send a demand letter to Marriott. Sanctions Motion, Exh. E. Plaintiff claims that the letter was sent by certified mail and that he possesses a green card signed by an authorized Marriott employee indicating that Marriott received something on August 28, 2009. *Id.* Marriott maintains that it has no evidence that it received the demand letter (leaving open the possibility that it received an empty envelope). *See* Opposition at 3-4 [Docket #38]. Regardless, although the letter sets forth the name of the plaintiff and the alleged date of the accident, it contains no further information about the nature of the alleged accident, plaintiff's claimed injuries, or where within the hotel the accident is purported to have occurred. Sanctions Motion, Exh. E. Neither party has provided any evidence that Marriott conducted an investigation into the alleged accident as a result of the demand letter, no records have been located indicating that

such an investigation occurred, and Marriott has not identified any witness that recalls having conducted such an investigation.  *See generally* Opposition.

Plaintiff filed the current action on May 27, 2011. [Docket #1].   On October 5, 2011, this Court (Hon. J.E. Boasberg), entered its initial scheduling order which required that initial disclosures be exchanged on or before October 14, 2011. [Docket # 15].   On November 22, 2011, plaintiffs[1] served on defendants their first set of Requests for Production of Documents and Interrogatories.  Sanctions Motion, Exh. 9 at ¶ 2.   On August 22, 2011, before initial disclosures were due or discovery requests received, a broken sprinkler head flooded a room where paper documents were stored, including loss prevention documents.  Opposition at 24 *citing* Exh. 8.  Neither party knows exactly whether any documents relevant to this action were amongst the destroyed documents.  *Id.*  Moreover, plaintiffs have not alleged nor demonstrated that Marriott was negligent in keeping the documents in this room or that the flood was a result of Marriott's negligence.

Plaintiffs' Sanctions Motion alleges that Marriott destroyed several documents it was obligated to preserve.  The alleged documents are: surveillance video of the lobby on the day of the alleged accident; the demand letter and the mail log that would indicate receipt of the demand letter; incident reports or other investigative records of the alleged accident involving plaintiff; and other incident reports or investigative records concerning possible problems the elevator at issue may have had prior to the alleged accident.  Plaintiffs also make a generalized claim that Marriott's delays in responding to discovery in this case has prejudiced them.  Each of these claims are addressed below.

---

[1]     By this point, Mr. Mahaffey had filed an amended complaint in which plaintiff Marie Mahaffey had been added as a party.

### III.  LEGAL STANDARDS

"A party has a duty 'to preserve potentially relevant evidence . . . "once [that party] anticipates litigation."'" *Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) *quoting D'Onofrio v. SFX Sports Group, Inc.*, 2010 WL 3324964 at *5 (D.D.C. Aug. 24, 2010) *quoting Smith v. Café Asia*, 246 F.R.D. 19, 21 n. 2 (D.D.C. 2007).   "A party that fails to preserve evidence 'runs the risk of being justly accused of spoliation' – defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation' – and find itself the subject of sanctions."  *Chen*, 839 F. Supp. 2d at 12 *quoting D'Onofrio*, 2010 WL  3324964 at 5 & n.5. "The sanctions available for the destruction of documents or evidence with notice of their potential usefulness in litigation may include the assessment of fines or attorneys' fees and costs, the preclusion of certain lines of argument that might have been advanced by the culpable party, and/or the issuance of an instruction informing jurors that they may draw an adverse inference from the spoliator's actions."  *Id.*  "A court generally imposes such sanctions in the exercise of its inherent authority '"to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."'"  *Chen*, 839 F. Supp. 2d at 12 *quoting Young v. Office of U.S. Senate Sergeant at Chambers*, 217 F.R.D. 61, 65 (D.D.C. 2003) *quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).[2]  "That authority 'must be exercised with restraint and discretion.'" *Id.* "Moreover, because the overriding purpose of the inherent power is 'to achieve the orderly and

---

[2]      Plaintiffs also argue that sanctions are appropriate pursuant to FED. R. CIV. P. 37.  But with respect to the alleged destruction of evidence, there is no dispute that the destruction of the videotape, loss prevention documents, demand letter and mail log occurred before any orders of this Court (some took place even before this action commenced).  And a production order is required in order to trigger Rule 37(b).  *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). Additionally, plaintiffs had not yet served any discovery on defendant, so Rule 37(c) is inapplicable as well.

expeditious disposition of cases,' the use of this power should reflect our judicial system's strong presumption in favor of adjudications on the merits." *Shepherd*, 62 F.3d at 1475 *quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962).

"[I]n order to demonstrate that an adverse inference instruction is warranted, the requesting party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Chen*, 839 F. Supp. 2d at 12-13 *quoting Mazloum v. District of Columbia Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C.2008) (citation omitted).[3]

# IV.  ANALYSIS

## A.  DESTRUCTION OF EVIDENCE

As set forth above,  plaintiffs' Sanctions Motion alleges that Marriott destroyed several documents it was obligated to preserve.  Plaintiffs' claims are addressed below.

### (1) Did Marriott have an obligation to preserve the evidence when it was destroyed?

For purposes of this motion, the Court is perfectly comfortable concluding that it is more likely than not that the demand letter was sent to and received by Marriott.  Thus, no later than August 28, 2009 (the Court need not decide if the earlier contacts triggered a duty to preserve

---

[3]     Plaintiffs request that this Court enter a default judgment against Marriott.  Sanctions Motion at 30-31.  But, in order to enter a default judgment as a sanction for bad faith conduct involving spoliation, the plaintiffs must prove such misconduct by clear and convincing evidence.  *Shepherd*, 62 F.3d at 1477. Plaintiffs have not come close to meeting that standard.

evidence), Marriott should have preserved evidence concerning plaintiffs' claims.  Accordingly,

there is no dispute that any relevant loss prevention documents should have been preserved.[4]

But the surveillance video presents a closer question.  Defendants argue that, because the

video images are over-written based on how much activity is captured on them, and summer is a

traditionally busy season for the hotel (the accident is alleged to have occurred on July 23), the

video was likely overwritten as early as twelve to fourteen days afterwards.  Opposition at 21.

That makes it possible that the requested videotape footage no longer existed when the demand

letter was received.  But plaintiffs point out that Marriott originally stated that the videotape

would have been over-written after thirty to sixty days.   Plaintiffs' Memorandum of Law in

Reply to Defendant, Marriott International, Inc.'s Opposition to Plaintiffs' Motion for Sanctions

Against Marriott ("Reply") at 11. [Docket #41].  Thus, the record is muddled concerning

whether the requested video images were still in existence at the time that the duty to preserve

attached.

But, although Marriott had a duty to preserve relevant evidence no later than August 28,

2009, did it have a duty preserve the video images?  The Court concludes that it did not.

A litigant "is under a duty to preserve what it knows, or reasonably should know, is

relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is

reasonably likely to be requested during discovery, and/or is the subject of a pending discovery

request."  *Arista Records, Inc. v.  Sakfield Holding Co.*, 314 F. Supp. 2d 27, 33 n. 3 (D.D.C.

2004).  The Court is not persuaded that, based on the demand letter (or the previous contacts),

---

[4]       Additionally, the same is true for the demand letter and the mail log.  But these documents have
no evidentiary value to plaintiffs' tort claims.  They are only relevant to whether Marriott had notice of
plaintiffs' claims as of that date.  As set forth above, the Court is prepared to assume as much.  Thus,
because these documents lack relevance to the underlying claims, their destruction does not merit
sanctions and the Court does not discuss them further.

Marriott should have reasonably known that video images of the lobby needed to be preserved. The demand letter (assuming it was received) gave almost no details of the alleged accident.  It certainly did not indicate that the accident occurred in the lobby or that plaintiffs could not identify the bellhop or certain front desk staff that could easily be identified by images captured by the lobby surveillance camera.  It is important to remember that the video is not alleged to have captured the accident or its aftermath.  Its evidentiary value is only to assist plaintiffs in identifying certain witnesses that they cannot now identify (and apparently made little or no independent effort to identify between the alleged accident on July 23, 2009 and the filing of this suit on May 27, 2011).[5]  As such, because Marriott could not have reasonably known that it had an obligation to preserve the video images when they were over-written (destroyed), no sanctions are merited for their destruction.  *Cf. Hansen v. Dean Witter Reynolds Inc.*, 887 F.Supp. 669, 676 (S.D.N.Y. 1995) (allegations in complaint did not put defendant on notice that certain evidence [trading tickets] would be relevant to litigation).[6]

---

[5]    The plaintiffs' demand letter compares unfavorably to the preservation letter discussed in *D'Onofrio*, 2010 WL 3324964 at *8 (describing letter sent by plaintiffs' counsel that included specific basis of claims and types of information to be preserved).

[6]    The Court understands that Marriott has provided plaintiffs with a list of all employees that were on duty on the day of the alleged accident.  The Court expects that Marriott meet and confer with plaintiffs in good faith in order to identify the individuals most likely to possess relevant information. Based on a general description of the bellhop/security guard from plaintiff, and including in the conversation Marriott personnel most familiar with those individuals on the list (not just lawyers), the list of potential witnesses can be narrowed substantially.

**(2) Was the destruction or loss accompanied by a culpable state of mind?**

Accordingly, based on the above analysis, the only "destroyed" evidence that remains at issue are the loss prevention documents.[7]  This category of documents is comprised of two subcategories.

The first subcategory consists of any investigative reports or similar documents created as a result of plaintiff's alleged accident.  Defendant has not been able to locate any such documents and has been unable to locate any witnesses that recall creating any such documents.  Plaintiffs have not identified any evidence that such documents were created but point to Marriott procedures and testimony that, based on the types of information plaintiffs claim they conveyed to Marriott (*e.g.,* bell hop coming upon accident, calls to front desk, security guard's visit to room, receipt of demand letter, etc.), an investigation *should have* been commenced.[8]  But there is no evidence that such an investigation did take place.[9]  Accordingly, if no such evidence was created, it could not have been destroyed.  *See, e.g.*, *Rude v. Dancing Crab at Washington Harbour*, 245 F.R.D. 18, 23 (D.D.C. 2007) (no sanctions imposed where plaintiff failed to show that videotape allegedly destroyed did, in fact, exist).

The second subcategory consists of any documents that would reflect previous problems with the elevator at issue in this case.  Plaintiffs justifiably claim that such documents, to the

---

[7]     It appears that plaintiffs also complain that Marriott destroyed guest folio documents.  But plaintiffs have not clearly shown that guest folio documents have been destroyed.  It appears that certain guest folio documents have been produced.  Plaintiffs fail to identify what type of information, if any, is missing and whether any destroyed information would be relevant to the claims in this matter.  Perhaps plaintiffs can clarify this issue with further discovery.

[8]     Plaintiffs read too much into Marriott's Initial Disclosures which simply state that such reports will be produced *if they exist*.  Such disclosures do not prove that such documents did, in fact, exist.

[9]     Tellingly, plaintiff does not claim that he was contacted/interviewed as part of an investigation.  It is unlikely that a loss prevention investigation would have taken place (in particular before the demand letter) without an attempt to take plaintiff's statement.

extent they existed, could prove critical to the liability aspects of the case by helping to demonstrate that Marriott was on notice of problems on the elevator but failed to address them. But, again, neither Marriott nor plaintiffs have put forth any evidence that any such documents ever existed.[10]

But, even if either type of document existed and was destroyed by the flood, plaintiff has not demonstrated that Marriott allowed such destruction with the requisite culpable state of mind. Although the parties go back and forth somewhat on what culpable state of mind is sufficient to impose sanctions, it is clear that, to justify the issuance of an adverse inference instruction, the destruction need not be purposeful, and negligent spoliation suffices.  *Chen*, 839 F. Supp. 2d at 13; *see also More v. Snow*, 480 F.Supp.2d 257, 274-75 (D.D.C. 2007) ("[A] court may employ an adverse inference due to a party's 'failure to preserve evidence,' even if deliberate or reckless conduct is not present.") (*quoting Rice v. United States*, 917 F.Supp. 17, 19-20 (D.D.C. 1996)).

Marriott claims that it is possible, if such documents existed, that they could have been destroyed when a broken sprinkler head flooded a room where paper documents were stored, including loss prevention documents.  But, at the time of the flooding, neither the Initial Disclosures nor discovery responses were due.  *See Buschmeier v. G&G Investments, Inc.*, 2005 WL 2545296 (W.D.Pa. 2005) (sanctions imposed despite inadvertent destruction of documents in flood because, at time of flood, party had already failed to comply with previous orders to produce the information and, if party had complied with previous order, documents would not have been destroyed in flood).  Although plaintiffs claim that Marriott failed to secure the evidence, they do not explain why it was negligent (or reckless) for Marriott to keep relevant

---

[10]     Plaintiffs have had an opportunity to take discovery from co-defendant Schindler Elevator Corp. but have not claimed that Schindler has destroyed evidence.  Plaintiffs have not put forth any evidence derived from Schindler elevator maintenance documents indicating that Marriott was previously on notice of problems with this particular elevator.  Perhaps some evidence will materialize with further discovery.

documents on-site in a secure room.[11]   *See Langley v. Union Electric Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (sanctions appropriate where, although party is not personally responsible for destruction of evidence, he "demonstrated poor judgment in where and with whom he stored the [evidence]").  So, in the end, although it is regrettable that important, relevant evidence *may* have been destroyed in the flood, there is no indication that this was anything other than an unfortunate accident and, as such, Marriott did not act with the requisite culpable state of mind to merit sanctions.  *See Brooks v. Felker*, 2011 WL 2313021 (E.D.Cal. 2011) (no sanctions appropriate where no evidence demonstrates that defendant's storing of documents in room that was flooded by broken pipe was unreasonable or violated duty to preserve evidence, and no evidence that defendant caused the broken pipe; destruction of documents was accidental, not misconduct, nor intentional or culpable spoliation of evidence).[12]

**(3) Was the evidence that was destroyed "relevant" to the claims or defenses?**

Even if Marriott had been negligent in allowing the loss prevention documents to be destroyed, sanctions would still not be appropriate.  As set forth below, because plaintiffs have not shown that the destroyed documents (to the extent that they even existed) would have been favorable to their case, and because Marriott did not have the requisite culpable state of mind concerning the destruction, plaintiffs cannot show that evidence destroyed was relevant to their claims.

---

[11]     Plaintiffs do not cite any cases suggesting that an attorney must personally secure all relevant evidence at the time that litigation becomes reasonably foreseeable.

[12]     This is not to say that the potential destruction of critical evidence does not have implications.  If Marriott bases its defense solely on the lack of evidence of prior notice, the fact that documents evidencing such notice may have been destroyed could potentially create a question of fact for purposes of summary judgment and may possibly be a valid basis for cross-examination at trial.

"The third and last requirement for an adverse inference instruction is a showing that the destroyed evidence was relevant to the moving party's claims or defenses.  In this context, 'the concept of "relevance" encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant.'" *Chen*, 839 F. Supp. 2d at 14 *quoting Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004)  "Relevance . . . 'may be inferred if the spoliator is shown to have a sufficiently culpable state of mind' . . . on the theory that a culpable spoliator may have something to hide."  *Chen*, 839 F. Supp. 2d at 15 *quoting Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp. 2d 736, 743 (S.D.N.Y. 2011).  "Where the moving party 'adduces evidence that its opponent destroyed potential evidence . . . in bad faith or through gross negligence . . ., that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party.'"  *Chen*, 839 F. Supp. 2d at 15 *quoting Centrifugal Force, Inc.*, 783 F. Supp. 2d at 743 (*quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002)).

As set forth above, plaintiffs have not established that the loss prevention documents (either investigatory records concerning plaintiff's alleged accident or records concerning previous problems with the elevator at issue) ever existed.  In fact, on the present record, there is no evidence that they did.  Thus, plaintiffs cannot show that the records destroyed in the flood were favorable to their case.  Accordingly, on the present record, the destroyed documents are not relevant.  And, because Marriott was not even negligent concerning the documents' destruction, there is no basis to infer the documents' relevance.  Even if Marriott had been negligent, such a state of mind is insufficient to infer their relevance.  *See generally Chen*, 839 F. Supp. 2d at 15 (requiring gross negligence or bad faith).  Accordingly, no sanctions are merited.

## B.  DISCOVERY DELAYS

Plaintiffs raise broad claims requesting discovery sanctions based on delays they claim were caused by Marriott's lack of diligence during discovery.  But, because plaintiffs have failed to make an adequate record on this point, and because other delays for which plaintiffs are, at least, partly to blame reduce or eliminate any prejudice caused by such delays, no sanctions will be imposed at this time.

Plaintiffs claim that they have had to re-depose certain witnesses and may need additional depositions of numerous Marriott witnesses due to newly produced documents and because previous testimony is inaccurate.  Reply at 24.  Although this claim may provide a basis for a modest award of costs, plaintiffs utterly fail in establishing a record to support it.  Nowhere do plaintiffs tell the Court which depositions were re-taken, what new evidence required it, what prior inaccurate testimony will require additional depositions, or who would be included in those additional depositions.[13]  On this inadequate record, no sanctions can be imposed.

To be sure, Marriott's handling of discovery in this matter could not be held up as a textbook example of how to diligently handle discovery.  It was slow to produce many documents (*e.g.*, floor plan).  Some documents, such as the folio documents, were only produced after extraordinary efforts by plaintiffs' counsel to extract them from Marriott.  And Marriott submitted sloppy interrogatory responses that were later contradicted by testimony (*e.g.*, video footage is over-written every 30 to 60 days; flood took place close in time to July 2009) suggesting a lack of adequate investigation on its part.  But none of the significant delays or sloppiness appear to have occurred since I assumed responsibility for the case in April of this

---

[13]      In a footnote, plaintiffs describe an inadequately prepared 30(b)(6) deponent but, in the same footnote, suggest the problem was, at least partially, cured.  This record is not sufficient to impose sanctions.

year.  Moreover, at least some of the discovery delays can be attributed to plaintiff's own confusion over the specific elevator on which the accident is alleged to have taken place. Additionally, plaintiff's recent accident and subsequent medical care has caused further delays that cannot be attributed to Marriott's discovery conduct.  As such, in light of these other delays, the Court cannot find that the modest delays caused by Marriott's "lack of diligence" prejudiced plaintiffs or delayed the ultimate resolution of this case.  Consequently, the Court declines to exercise its discretion by sanctioning Marriott at this time.  But Marriott is on notice that further unjustified delays, foot-dragging, lack of diligence, or failure to take this case seriously will result in consequences.

## V.   CONCLUSION

For the foregoing reasons, plaintiffs' Sanctions Motion against defendant Marriott is denied. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of October, 2012.

RUDOLPH CONTRERAS
United States District Judge